## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE DOE, an individual,                    Case No.

    Plaintiff,                    **THIS DOCUMENT WAS**
                                            **ELECTRONICALLY FILED**

v.

UNIVERSITY OF KENTUCKY,

    Defendant.

### COMPLAINT FOR DAMAGES WITH JURY DEMAND

JANE DOE, through counsel, hereby files this Complaint against the University of Kentucky ("Defendant") alleging that Defendant has engaged in and continues to engage in unlawful discrimination against her in violation of the Americans With Disabilities Act, 42 U.S.C. §12181-12189.

### PARTIES

1.     Plaintiff Jane Doe ("Plaintiff") is an individual who resides in Wexford, Pennsylvania.  She is an individual with a disability as defined by the Americans With Disabilities Act of 1990, 29 U.S.C. §§ 791, 2 et seq.  She was diagnosed with a life-threatening allergy to dairy (cow's milk) at birth.  As a result of her allergy, Plaintiff must only eat certain foods that are free from her allergen and free of cross-contamination with her allergen.

2.     Defendant University of Kentucky ("the University") is a public university located in Lexington, Kentucky.  It is the largest public college in the state of Kentucky and has an endowment of $1.28 billion.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202.

1

4.      Venue is appropriate because Plaintiff resides in Pennsylvania, the events giving rise to the cause of action occurred in Pennsylvania, and the Defendant has sufficient contacts with Pennsylvania.

## FACTS

5.      Plaintiff Jane Doe is an exceptionally bright young woman who graduated from high school in June of 2018.

6.      Plaintiff was diagnosed at birth with a life-threatening allergy to dairy (cow's milk).  She also has various food intolerances and sensitivities.  She is a disabled person as her condition causes a substantial limitation of her ability to eat and impacts her circulatory and digestive systems.  In order to stay healthy and avoid a life-threatening reaction, Plaintiff must strictly avoid eating and coming into contact with foods containing dairy.

7.      Plaintiff is a National Merit Scholar, which means that she has superior academic credentials and is ranked among the top .5% of students in the Commonwealth of Pennsylvania. She was recruited by several colleges.

8.      Plaintiff applied to University of Kentucky in the fall of 2017, and was accepted to their honors program in November of 2018.  The University later offered her a full scholarship known as the Patterson Scholarship which included full payment of tuition and fees for four years plus a stipend for room and board.

9.      Because she liked what the University had to offer regarding academics, extra-curriculars, honors program, scholarship, etc., Plaintiff rejected other similar scholarships from other universities and implicitly accepted the University's offer.  She communicated her selection with the University through the National Merit online portal.

10.     During her campus visit on March 30, 2018, Plaintiff and her mother informed the University that she had a life-threatening food allergy.  They spoke with Sandy Copher, Director of Scholarships.

11.     Plaintiff and her mother asked the University about the policies they had in place to accommodate food allergies during the tour in March of 2018.  They were told at that time that there were no such policies.

12.     They did learn, however, during that same tour of the University in March 2018, that the campus had two pick up window food service stations called "Worry-Free Zones." The "Worry-Free Zones" are the only two specific areas in the residential dining locations for those with "allergen intolerances." On the tour the Plaintiff and her family were advised by the tour guide that the "Worry-Free Zones" were free of all top allergens.  As they learned later in the summer through online searches, the "Worry-Free Zones" were created in September of 2016 and were touted to be "the only gluten-, peanut-, tree nut- and shell fish-free kitchens on campus." [1] The other 31 or so cafeterias at the school serve multiple food selections in each of the locations throughout the day.

13.     These "Worry-Free Zone" windows only served one meal option a day and did not list the ingredients of the foods served there.  During the week of her visit in March of 2018, Plaintiff noticed that the "Worry-Free Zone" she observed in person served only spicy dishes that she could not tolerate.  Once she returned to her hotel room after the tour, she looked up the weekly menu for the "worry-free" zones and discovered that the only option served each day was spicy as well as appeared to contain dairy allergen given there was cheese noted to be on the food or cream based sauces covering the food.  Plaintiff's mother tried to ask questions of school representatives about what ingredients were in the food served at the "Worry-Free Zone"

---

[1] See https://uknow.uky.edu/content/uk-dining-introduces-worry-free-zone-fresh-food-company

3

following their tour in March of 2018. She was repeatedly told by various representatives of the University that they were free of the top major allergens[2].

    14.    Plaintiff's mother asked Scott McDonald, Dean of Admissions, in depth questions about the "Worry-Free Zone" food after returning home and asked whether it served foods containing dairy. She never received a satisfactory answer from Mr. McDonald, but instead, he referred her to their dietician.

    15.    On April 6, 2018, Plaintiff received an email from Sandy Copher which stated the following: "I am still checking on housing and dining options. The University of Kentucky has a Registered Dietitian that works directly with students that have special dietary needs on campus. I am checking with her to learn the process you would need to go through to see if UK can meet your needs." See attached **Exhibit "A"**.

    16.    On April 12, 2018, Plaintiff received another email from Ms. Copher that said that Plaintiff should contact Susan Fogg, the Disability Accommodations Consultant, to discuss food allergy accommodations. See attached **"Exhibit B"**. The next day, Plaintiff sent an email to Ms. Fogg. See attached **Exhibit "C"**.

    17.    Ms. Fogg forwarded information about Plaintiff to dietician Lauren McKnight-Ford on April 13, 2018. Ms. McKnight-Ford indicated that she needed more information to address possible accommodations which was promptly forwarded.

    18.    Days went by without Plaintiff having received a response from Ms. McKnight-Ford, so on April 17, 2018, Plaintiff sent McKnight-Ford an email asking if the two could arrange to speak as the May 1 deadline for accepting offers was fast approaching.

---

[2] The top major allergens, as defined by federal statute and the FDA, are peanuts, tree nuts, milk, soy, wheat, fish, egg and shellfish. *Food Allergen Labeling and Consumer Protection Act of 2004. 21 USC 301.*

19.     On April 26, 2018, Ms. McKnight-Ford had an email exchange with Plaintiff in which she incorrectly asserted that the Wildcat Pantry on campus had dairy-free items to purchase.  McKnight-Ford further stated that the University would not order any special foods for dinner or snacks, such as dairy-free yogurt or frozen treats, but that the items currently served at the "Worry-Free Zones" were dairy-free.  Based on this information, McKnight-Ford concluded that the University "can accommodate her dietary requirements."

20.     However, the accommodations proposed at that time were unacceptable.  Plaintiff was not allowed to opt-out of the meal plan, the nutritionist admitted that the University could not provide Plaintiff breakfast, lunch consisted of a peanut-butter sandwich, and dinner would be provided somehow in the Worry-Free Zone that was not free of dairy let alone the nutritionist said that they could not commit to dinners on all days.  For breakfasts and some dinners Plaintiff would be expected to ride a bus, buy her own food, store her own food with no provision to do so and then cook her own food with no provision to do so.

21.     On May 1, 2018, the deadline for accepting offers at other colleges passed without Plaintiff having accepted any other offers from other colleges as she was still in the process of negotiations with the University of Kentucky.

22.     On May 18, 2018, Plaintiff filed an appeal of the accommodation decision with Holly Sandlin in the Office of Enrollment Management.

23.     In response to the appeal, the University sent Plaintiff a letter on May 22, 2018, that denied the appeal.  See attached **Exhibit "D"**.  This letter contradicted what the nutritionist said.  The letter again wrongly stated that dairy-free foods were served at the "Worry-Free Zones." The letter also said that Plaintiff would not be exempted from the mandatory meal plan.

24.     Concurrent with the meal accommodations discussions, Plaintiff was having discussions about her housing arrangements with Mr. David T. Beach, Director of the Disability Resource Center. These discussions began on or about May 1, 2018.

25.     On May 16, 2018, Mr. Beach told Plaintiff's mother and Plaintiff that Plaintiff would be assigned a "Non-ADA" double room and that Plaintiff could use social media as a way of alerting potential roommates about her allergy to find someone willing to share the dorm room with Plaintiff. They refused to do so, as such a disclosure would be a violation of privacy.

26.     Plaintiff and her mother reached out to the Department of Justice office in Philadelphia, Pennsylvania for help. The Philadelphia Office suggested that she file a complaint with the Office for Civil Rights (hereinafter "OCR") at the US Department of Education, which she did on May 30, 2018.

27.     During the meeting process, on June 27, 2018, among Plaintiff's mother, OCR and the University, the University through its counsel admitted that the food served in the "Worry-Free Zones" was in fact NOT dairy-free, in direct contrast to the previous representations made by the University's staff and nutritionist and the May 22, 2018 letter.

28.     The University's counsel often raised his voice at Plaintiff and/or her mother during the meeting process and spoke to them in derogatory manner. He insisted that she should just "prepare her food like other students do in a communal kitchen." Counsel kept asking Plaintiff's mother what she was going to do to provide food for the plaintiff rather than asking what accommodations the University would provide. In so doing, he illegally shifted the burden of making accommodations on to Plaintiff and her family rather than the University.

29.     On a telephone call on June 27, 2018 with Plaintiff's mother, OCR and the University, counsel for the University proposed that the school would now provide Plaintiff

breakfast but not lunch. The peanut butter sandwich that had been previously offered was taken away because it would interfere with students with peanut allergies. The University revoked their offer to serve her dinner. There was some discussion about having meal kits delivered to Plaintiff's dorm, but this was not researched by the University as Plaintiff would have no means of cooking the food and no one had inquired if such kits were dairy-free. There was some discussion of apartments but the University thought they were all full. University counsel indicated he was not pleased that the Plaintiff did not have a car although owning a car is not a requirement of attending college.

30.     In addition, the honors program has several events involving food that Plaintiff would be responsible for paying for. The University refused to waive the portion of the fees allocated for food if Plaintiff brought her own food, but refused to ensure that there would be food at those events that Plaintiff could eat.

31.     Also, during this call, counsel for the University continued to threaten to take away Plaintiff's scholarship if she did not agree to the University's demands. These threats caused Plaintiff great anxiety and stress when she learned of them.

32.     When, during the call, Plaintiff's mother insisted that the University should comply with the requirements established in the *Lesley* DOJ case, the attorney said that the University did not have to comply with that decision.

33.     On July 20, 2018, following a conference call on July 19, 2018 regarding the same, Plaintiff received a letter from the University's Office of Institutional Equity and Equal Opportunity that purported to outline the accommodations offered to Plaintiff by the University. See attached **Exhibit "E"**. The proposed accommodations included the following: 1) Opt out of Meal Plan for breakfast/lunch; 2) Full-size refrigerator in dorm room along with a standalone

7

countertop microwave; 3) Meal Plan of 7 meals/week (dinner) at a cost of $1,100; 4) Prepare 14 different dinners (recipes provided by the Doe's) on a rotating schedule which Plaintiff could pick up on her own at The 90 Restaurant; and 5) Transportation Options (at Plaintiff's own expense) to obtain groceries included her using the Lextran bus system, renting one of the limited Zipcars of the University's car sharing service, or having groceries delivered at her own expense from her preferred store.

34.     Plaintiff was on the July 19 call at the insistence of the University.  During the call University counsel was exceedingly harsh towards both her and her mother telling them they had better come to terms with the offer or lose the scholarship which aggravated the stress and anxiety Plaintiff and her family continued to endure.

35.     These accommodations were totally unacceptable to Plaintiff.

36.     For example, for Plaintiff to ride a city bus through undesirable neighborhoods to a nearby Whole Foods store to purchase dairy-free foods herself would take time away from her studies and would be nearly impossible logistically given the amount of food products to be transported and the perishable nature of many of them.

37.     In addition, a full-sized refrigerator would make considerable noise in a small dorm room.  A microwave is not adequate to prepare the scratch-cooking type meals that Plaintiff eats.

38.     Furthermore, the solutions were unacceptable because Plaintiff was promised through her scholarship that the University would pay for most of her room and board. Purchasing her own food at Whole Foods would have exceeded the stipend amount guaranteed by the University by thousands of dollars.  Plus, Plaintiff would be responsible for providing her own recipes rather than the University.  Also, the 90 Restaurant was located at one end of the

8

campus, and it would be impossible for Plaintiff to get there in time if she had a late class or were on the other side of campus. Lastly, the University indicated it would have to hire a new chef to cook the dinners and they may or may not have been able to hire and train a chef in time.

39. OCR informed Plaintiff and her mother at the beginning of their involvement that it was likely it would not be possible to have a resolution before the beginning of the start of classes for the 2018-2019 school year. OCR advised Plaintiff to pursue opportunities at another college, at her own expense, while the matter was being negotiated and she complied.

40. Meanwhile, other students are free to eat anywhere on campus that is convenient for their classes and at times that are convenient. Plaintiff would not have had this flexibility but would be forced to sit at a specific place at a specific time with only one meal choice for dinner while being forced to travel to Whole Foods, shop, purchase, transport, and prepare two meals a day.

41. Plaintiff and her family rejected the take-it-or-leave-it offer. OCR then tried to negotiate another resolution where the University would work towards providing Plaintiff with a safe and breakfast and lunch at two dining halls. The University would have to report its progress every two weeks. However, this was subject to the University's argument that to do so would be an undue burden. Because Plaintiff did not feel comfortable with nor trusted the promises of the University to work toward safe meals due to its ever-changing unreasonable offers throughout the process, and would involve working with the dietician who had lied to her in the past, she refused the offer and closed her case with the OCR as futile, pointless and "doomed to fail." She enrolled in a local college at her own cost.

42. Plaintiff still wants to attend the University of Kentucky, but cannot do so unless it is a safe environment for her attend. The University has threatened to withdraw the

9

scholarship if Plaintiff enrolls in any other university during the pendency of these negotiations. Such action is retaliatory.

43.     Plaintiff and her family have suffered great emotional distress.  What should have been a happy time celebrating her academic accomplishments and beginning a new chapter of her life has turned into a stressful, emotional process where Plaintiff has been made to feel like a second-class citizen and incur extra cost.

## COUNT I
## AMERICANS WITH DISABILITIES ACT

44.     Plaintiff incorporates the allegations contained in paragraphs 1 through 43.

45.     Plaintiff's food allergy to dairy (cow's milk) is an impairment that impacts many body systems, including her immune system, cardiovascular system, digestive system and circulatory system with potentially life-threatening consequences.  She is substantially limited in the major life activities of eating and breathing.  When Plaintiff ingests even small amount of milk, her immune system responds by causing her blood pressure to drop which can lead to irreversible organ failure and death.

46.     The University is a public college as defined by Title II of the Americans With Disabilities Act.

47.     The University must be willing and able to make reasonable accommodations to allow Plaintiff to attend its programs as equally as other nondisabled students.

48.     Defendant discriminated against Plaintiff in violation of the ADA in denying her equal and safe access its programs and services.

49.     As a direct result of the actions of Defendant, Plaintiff has suffered harm.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

50. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

51. Defendant is a public university that receives Federal financial assistance.

52. Defendant must be willing and able to make reasonable accommodations to allow Plaintiff to attend its programs as equally as other nondisabled students.

53. Defendant discriminated against Plaintiff in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 in denying her equal and safe access its programs and services.

54. As a direct result of the actions of Defendant, Plaintiff has suffered harm.

WHEREFORE Complainant prays for relief and judgment as follows:

   a. Declare that Defendant discriminated against Plaintiff by denying her equal access to its programs and services;
   b. Declare that Defendant must enroll Plaintiff into its program with her full scholarship intact;
   c. Require Defendant to enact comprehensive food allergy policies that are fair and substantially equal to those of other students;
   d. Award compensatory damages, including reimbursement for tuition, fees and transportation costs for the college Plaintiff is currently attending;
   e. Assess civil penalties;
   f. Provide equitable relief;
   g. Provide reasonable attorneys' fees and costs; and,
   h. All other appropriate declaratory, equitable, injunctive and monetary relief.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all claims.

Respectfully submitted,

**WALSH, BARNES, COLLIS
& ZUMPELLA, P.C.**

By  /s/Gina M. Zumpella
Gina M. Zumpella, Esquire
Pa. ID. No. 87774
707 Grant Street, Suite 1400
The Gulf Tower
Pittsburgh, PA 15219
Phone: (412) 258-2255
Facsimile: (412) 263-5632
gzumpella@walshlegal.net
*Counsel for Plaintiff*

By  /s/Laurel J. Francoeur
Laurel J. Francoeur, Esquire
Mass. BBO# 633085
*Pro hac vice pending*
Francoeur Law Office
100 TradeCenter, Suite G700
Woburn, MA 01801
Phone: (781) 569-5369
laurel@francoeurlaw.com
*Counsel for Plaintiff*

Date:  July 2, 2019