**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 2:19-cv-00784 RJC |
| | ) | |
| UNIVERSITY OF KENTUCKY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Robert J. Colville,  United States District Court Judge.

Presently pending before the Court is a Defendant's Motion to Dismiss or in the Alternative Transfer Venue." [ECF No. 29].  For the reasons stated herein the Motion to Dismiss will be denied to the extent it seeks dismissal and granted to the extent it seeks transfer to another forum.

## I.  PROCEDURAL HISTORY

The Complaint in this matter was filed on July 2, 2019 (ECF No. 1) (hereinafter "Complaint" or "Compl."). On September 3, 2019, Defendant University of Kentucky (hereinafter "Defendant" or "the University") filed the instant motion, with brief in support (ECF Nos. 9, 10), and on October 4, 2019, Plaintiff filed her response in Opposition to the Motion to Dismiss (with exhibits) (ECF No. 21) and Response in Opposition to the Motion to Transfer Venue (ECF No. 22).  On October 18, 2019 Defendant filed its Reply Brief.  (ECF No. 23).  The matter is now ripe for adjudication.[1]

## II.  FACTUAL ALLEGATIONS

The allegations in the Complaint are as follows.  Plaintiff Jane Doe ("Plaintiff") is an individual who resides in Wexford, Pennsylvania.  Compl. ¶1.  Defendant is a public university

---

[1] The case was reassigned to this member of the Court on February 4, 2020. (ECF No. 37).

located in Lexington, Kentucky.  Compl. ¶ 2.  Plaintiff applied and was accepted to the University in the fall of 2017 and was subsequently accepted into the University's honors program. The University later offered her a full scholarship known as the Patterson Scholarship which included full payment of tuition and fees for four years plus a stipend for room and board.  Complaint ¶ 8. Plaintiff alleges she is allergic to dairy and has various food intolerances and sensitivities.  In order to stay healthy and avoid life-threatening reaction, she must strictly avoid eating and coming into contact with foods containing dairy.   Complaint ¶ 6.

In March 2018, Plaintiff and her mother visited the University's campus in Lexington, Kentucky. Complaint ¶10. During that visit, Plaintiff and her mother informed Sandy Copher, the University's Director of Scholarships, about Plaintiff's food allergy. Complaint ¶10.   Plaintiff and her mother also inquired about the University's policies for accommodating food allergies and learned about the University's "Worry-Free Zones," which are food service stations free from top allergens. Complaint ¶¶ 11-12.   Plaintiffs mother then contacted Scott McDonald, the University's Dean of Admissions, with additional questions regarding the Worry-Free Zones. Complaint ¶ 14. Plaintiff also communicated via email with Sandy Copher, who was checking on dining and housing options that could accommodate Plaintiff. Complaint ¶15, Ex. A. Copher also informed Plaintiff the University has a Registered Dietician who works directly with students who have special dietary needs. Complaint ¶15.  On April 12, 2018, Copher informed Plaintiff of the process for requesting a food-allergy accommodation and referred Plaintiff to Susan Fogg, the University's Disability Accommodations Consultant, to discuss Plaintiffs food-related allergy accommodations. Complaint ¶ 16, Ex. B. Fogg also communicated with Lauren McKnight-Ford, a dietician, regarding Plaintiffs food allergies. Complaint ¶ 17.

In addition to her food-allergies, Plaintiff requested accommodations related to her on-

campus housing arrangements through David Beach, Director of the University's Disability Resource Center. Complaint ¶¶ 24-25. After engaging in the interactive process, the University offered Plaintiff a reserved private suite in the honors program dormitory at no additional cost to Plaintiff. Complaint, Ex. E. The University subsequently engaged in an interactive accommodations process with Plaintiff regarding her food- and housing-related accommodation requests. As the Exhibits to Plaintiffs Complaint make clear, On July 20, 2018, the University offered Plaintiff a variety of accommodations, including, inter alia, a refrigerator and microwave in her room, meals prepared in accordance with recipes provided by Plaintiff's family. Compl. ¶ 33, Ex. D & E. These accommodations were unacceptable to the Plaintiff. Complaint ¶ 35. Plaintiff ultimately enrolled in a local college at her own cost.  Compl. ¶ 41.

As a result of this disagreement, Plaintiff filed suit and alleges the University violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12131 *et seq*., and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*

## III.  STANDARD OF REVIEW

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings,* Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.1992)). However, once a defendant has properly raised a jurisdictional defense, the plaintiff bears the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.1990) (per curiam).

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise

personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *North Penn Gas,* 897 F.2d at 689. In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 489-90 (3d Cir.1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b); *Van Buskirk,* 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas,* 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington.,* 326 U.S. 310, 316 (1945) (quotations omitted).

## IV.  DISCUSSION

The University argues that this Court lacks personal jurisdiction over it in this case, either under the requirements of specific personal jurisdiction or general personal jurisdiction, and therefore, the case must either be dismissed or transferred to a district court that does have personal jurisdiction over the University.

### A.  General Jurisdiction

General jurisdiction is based upon the defendant's "continuous and systematic contacts"

with the forum. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

We are bound by precedent. In *Gehling v. St. Georges School of Medicine,* 773 F.2d 539 (3d Cir. 1985), the parents of a medical student at St. George's School of Medicine, an institution in Grenada, West Indies, filed a wrongful death action against the medical school in the United States District Court for the Middle District of Pennsylvania after their son died following his participation in a school-sponsored road race. The district court held that it lacked general jurisdiction over the medical school, and the United States Court of Appeals for the Third Circuit affirmed. *Id.* at 540. The Third Circuit held that there was no personal jurisdiction despite the fact that 6 percent of the students that matriculated with the decedent came from Pennsylvania; that the school placed advertisements in two national newspapers that circulated throughout Pennsylvania; that it sent its chancellor and vice-chancellor to Philadelphia as part of a nine-city "media swing" to gain exposure for the school; and that it entered into an agreement with Waynesburg College in Waynesburg, Pennsylvania to establish an international educational program combining two years of pre-medical studies at Waynesburg with medical training at St. George's. *Id.* at 541–42.

The court emphasized that the fact that some of St. George's students were Pennsylvania residents did not constitute a relevant business contact supporting the exercise of general jurisdiction. It noted that because advanced educational institutions typically draw their student body from various states, basing jurisdiction on such a contact would subject universities to suit in every state where a student resides. See *Gehling, supra*, 773 F.2d at 542. For the same reason, the court concluded that the fact that St. George's derived some percentage of its revenue from Pennsylvania residents for services provided in Grenada did not subject the school to personal

jurisdiction. *Id.* at 543. The court also held that St. George's advertisements in newspapers with international circulations, as well as its establishment of a joint educational program with a Pennsylvania college, did not constitute a continuous and substantial business relationship sufficient to support the exercise of personal jurisdiction over it. *Id.* at 542–43.

Relying on *Gehling,* a court in the Eastern District of Pennsylvania held that it could not exercise general jurisdiction over Columbia University based on contacts with Pennsylvania that are similar to those alleged in this case. *See Gallant v. Trustees of Columbia University in the City of New York,* 111 F.Supp.2d 638 (E.D. Pa. 2000). In *Gallant,* the estate of patient who had been treated by a physician employed by Columbia University filed an action against the university in federal district court in Pennsylvania. The plaintiff alleged that Columbia had sufficient contacts with Pennsylvania to support the exercise of general jurisdiction. These contacts, which Columbia did not dispute, consisted of a student body that included Pennsylvania residents; collection actions that Columbia had filed in Pennsylvania state court; at least four trust accounts overseen by a bank in Philadelphia; fund raising and recruitment activities in Pennsylvania; participation by Columbia professors and other employees in conferences, visiting professorships, and other academic activities in Pennsylvania; participation in athletic events in the state; and research contracts or agreements to conduct clinical trials between the university and at least six pharmaceutical companies conducting business in Philadelphia. *Id.* at 640.

The district court noted that although Columbia's contacts were more significant than those at issue in *Gehling,* none of the contacts "demonstrate[d] that Columbia ha[d] purposefully directed its activities [toward], or purposefully availed itself of, [the] Pennsylvania [forum]." Rather, the court explained, the contacts were "the result of Columbia's participation in the type of interstate activity in which any nationally prominent educational institution would

6

engage." *Gallant, supra,* 111 F.Supp.2d at 641. The court explained that the fact that Columbia participated in athletic events in Pennsylvania, and that its professors and employees regularly traveled to Pennsylvania to attend conferences, deliver lectures and act as visiting professors, could not support the exercise of general jurisdiction in the absence of any evidence that Columbia and its employees focused such activities on Pennsylvania, as opposed to participating generally in interstate activities, some of which took place in that state. Further, the court noted that there was nothing in the record to indicate that Columbia's research contracts or clinical trial agreements with firms in Pennsylvania were the result of its purposeful availment of the benefits of doing business in the forum. *Id.* at 642.

After reviewing the allegations and the submitted jurisdictional evidence, the Court concludes it does not maintain general jurisdiction over the Defendant. Plaintiff has not shown that the University has sufficient contacts with Pennsylvania to establish general personal jurisdiction. She appears to nearly concede this point, "[b]ecause the plaintiff can show that this court has specific personal jurisdiction, plaintiff does not need to show that this court has general jurisdiction." (ECF No. 21 at 10).[2] She has not alleged or shown that the University provides educational programs in Pennsylvania, or operates campuses in Pennsylvania, other than those beyond the normal contacts which nationally recognized universities have outside their own states. Under binding precedent in this Circuit, and on the record before the court, the University's activities in Pennsylvania cannot be characterized as so continuous and systematic that it must be deemed "at home" in Pennsylvania. Accordingly, there are no grounds for general jurisdiction.

---

[2] Her arguments as to the defense of sovereign immunity and the University's citizenship for purposes of diversity jurisdiction do not inform our analysis. It is clear that the University is outside the scope of the entities listed in the long-arm statute. 42 Pa. C.S.A. § 5301. We need not make a finding as to its Eleventh Amendment immunity.

**B.  Specific Jurisdiction**

Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit  has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.* However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir.2004). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction rests"-- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *Id.* at 323.

Plaintiff argues the following facts support specific jurisdiction: the University held a special reception in Pittsburgh, Pennsylvania for the purposes of recruiting National Merit scholars with the hopes that those students would attend the University (for financial gain to the University); the parties traded phone calls to and from Pennsylvania for the purposes of forming an agreement; and the University has and continues to send letters to plaintiff at her home in Wexford,

Pennsylvania.  The weaknesses in this argument are apparent.  Defendant may have directed very limited activities at the forum, i.e. the first prong in the three-part analysis for specific jurisdiction as described above.  But Plaintiff has failed to meet the second prong of the analysis: her claims (ADA and Rehabilitation Act) must *arise out of* the University's contacts with Pennsylvania.  The allegations are that she was denied accommodations related to her meal plan on the university campus and her on-campus housing.  The alleged acts and omissions which caused Plaintiff harm all took place in Kentucky.  Moreover, her Pennsylvania residency is not enough:  "[t]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises." *Marten v. Goodwin,* 499 F.3d 290,  298 (3d Cir. 2007); *see also Jarzynka v. St. Thomas Univ. Sch. of Law*, 323 F. Supp. 2d 660, 663-64 (W.D. Pa. 2004) (finding that the following contacts in an ADA claim brought by an expelled former student were not enough for specific jurisdiction: the law school mailed letters to the plaintiff, the law school made an application available to the plaintiff, the law school invited the plaintiff to visit its campus, the law school offered the plaintiff a full scholarship, and the law school sent the plaintiff correspondence regarding financial aid and housing);  *Rodi v. S. New Eng. Sch. of Law*, 255 F. Supp. 2d 346, 350 (D.N.J. 2003) (holding that a form letter and an acceptance letter from the defendant law school were insufficient to establish minimum contacts); *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923-24 (D. Md. 1995) (explaining that the exchange of correspondence between the plaintiff and the defendant university is not a proper basis for exercising specific jurisdiction); *Cassell v. Loyola Univ.*, 294 F. Supp. 622, 623 (E.D. Tenn. 1968) (stating that "[t]raditional notions of fair play and substantial justice prevent the Court from holding that a non-profit educational institution renders itself subject to service of process in every state of the union

from which it may seek or attract outstanding athletes and scholars"). Simply put, "specific personal jurisdiction is claim-specific, and where there is no connection between the contacts with the forum state and the claim, specific jurisdiction does not lie." *Jarzynka*, 323 F.Supp.2d at 664.

### C. Transfer

Although we lack personal jurisdiction over the University, we conclude that transferring this action to the United States District Court for the Eastern District of Kentucky, Central Division at Lexington, better serves the interests of justice than dismissing it. See 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed ..."). Personal jurisdiction and venue are proper in the Eastern District of Kentucky as Defendant is located there and a substantial part of the events or omissions giving rise to the claim occured there. *See* 28 U.S.C. § 1391. Moreover, a transfer is in the interest of justice because it will prevent the duplication of filing costs. *See Lawman Armor Corp. v. Simon,* 319 F.Supp.2d 499, 507 (E.D. Pa. 2004) ("Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." (*quoting In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F.Supp.2d 717, 734 (S.D.N.Y.2003))).

An appropriate Order follows.

DATED:  February13th, 2020

/s/ *Robert J. Colville*
Robert J. Colville
United States District Court Judge